# Brafman & Associates, P.C.

ATTORNEYS AT LAW

256 FIFTH AVENUE, 2ND FLOOR

NEW YORK, NEW YORK 10001

TELEPHONE: (212) 750-7800

FACSIMILE: (212) 750-3906

E-MAIL: ATTORNEYS@BRAFLAW.COM

BENJAMIN BRAFMAN

MARK M. BAKER
OF COUNSEL

MARC A. AGNIFILO
OF COUNSEL

ZACH INTRATER
OF COUNSEL

ANDREA L. ZELLAN

JACOB KAPLAN
ADMITTED IN NY & NJ

TENY R. GERAGOS
ADMITTED IN NY & CA

December 6, 2022

VIA ECF
Honorable George B. Daniels
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

Re: United States v. Zilberberg, 19 Cr. 802 (GBD)

Dear Judge Daniels:

We write in response to the government's November 17, 2022, Motions *in Limine* (Dkt. No. 84). We will address each motion in turn.

## I. Other Loan Evidence

The government seeks to introduce at trial three other loans at the victim bank (referred to by the government as Loans 2, 3, and 4) where Zilberberg allegedly received a portion of the loan proceeds. (Gov't Motions *in Limine* at 10–17.) The proffered loans are as follows:

- Loan 2: a $118,000 loan to Zilberberg's niece on July 22, 2008;

- Loan 3: a $400,000 expansion of a line of credit to Zilberberg's client in September 2009; and

- Loan 4: a $300,000 loan to alleged co-conspirator Aaron Fried's father-in-law in September 2009.

In support of its motion, the government claims that the three loans are admissible "as direct evidence to provide background and context for the conspiracy, to show its means and

methods, and to demonstrate the nature of the criminal relationship between Zilberberg and Fried." (Gov't Motions *in Limine* at 15.) Although these arguments may apply to Loans 3 and 4, they do not apply to Loan 2. Specifically, Loan 2 does not provide "background and context for the conspiracy" because Zilberberg's niece took the loan out on July 22, 2008—more than 13 months before the loan that is the subject of the trial. The loan also does not "show the means and methods" of the conspiracy because, unlike the other loans, Loan 2 was a passbook loan–a loan made to the bank's account holder and collateralized by the account holder's money deposited with the bank. As such, Loan 2 as opposed to the other loans, did not go through the same underwriting process at the bank. Loan 2 also does not "demonstrate the nature of the criminal relationship between Zilberberg and Fried," as Fried was not involved in Loan 2.

The government further claims that, "[i]n addition to common tactics, scheme participants, beneficiaries, and funding methods, these three loans also involved Zilberberg's use of common Bank personnel – such as Employee-1 – in order to facilitate his scheme." (*Id.*) Employee-1, however, was not involved in Loan 2, as demonstrated by the following testimony before the FDIC:

> FDIC: Do you know about the loan that Mendy Zilberberg's niece Miriam Zilberberg got from the bank?
>
> EMPLOYEE-1: I don't know, no. I never heard of her.

(11/7/13 FDIC Testimony at 566.)

The government also claims that Loans 3 and 4 are admissible as direct evidence because the loans are "inextricably intertwined with the evidence relating to Loan-1 and necessary to complete the story of the crime at trial." (*Id.* at 16.) Tellingly, the government did not make this same argument regarding Loan 2, as it was issued more than 13 months before the loan involved in the indictment.

The government next argues that the 3 loans should be admitted at trial under F.R.E. 404(b) as proof "of Zilberberg's plan and preparation, knowledge, intent, motive, absence of mistake, and the existence of a common scheme across these frauds." (*Id.*) The government further argues that "[g]iven the similarity of the conduct and the contemporaneous or very proximate timeframe, evidence of these three loans is highly probative of these issues, which all go toward the defendant's state of mind." (*Id.* at 17.) As noted above, however, Loan 2 was issued more than 13 months before the loan in this case. Moreover, unlike the loan in this case, Loan 2 did not involve providing false financial information to the bank, did not involve the bank's underwriting

procedures, did not involve Employee-1 at the bank, and did not involve co-defendant Fried. Accordingly, Loan 2 has little, if any, probative value.

Moreover, even if Loan 2 had probative value, this Court should still refuse to admit the evidence based on F.R.E. 403 because admitting Loan 2 would significantly prejudice Zilberberg—as his niece ultimately had to use her own personal savings to repay the loan when Zilberberg stopped making payments. As a result, the testimony regarding Loan 2 would be more inflammatory than the charged conduct because it makes it seem that Zilberberg is willing to have his family (not just the bank) lose money for his own economic benefit.

We respectfully submit that this prejudice would not be cured by a limiting instruction. After all, limiting instructions are not a cure-all for prejudice at trial. If it were, F.R.E. 403 would be rendered a nullity because all prejudice could be avoided simply by issuing a limiting instruction. Rather, as the Supreme Court noted in *Burgett v. Texas:* "What Mr. Justice Jackson said in *Krulewitch v. United States*, 336 U.S. 440, 445, 453 [] (concurring opinion), in the sensitive area of conspiracy is equally applicable in this sensitive area of repetitive crimes, 'The naive assumption that prejudicial effects can be overcome by instructions to the jury * * * all practicing lawyers know to be unmitigated fiction.'" *Burgett v. Texas*, 389 U.S. 109, 115, 88 S. Ct. 258, 262 (1967). That is certainly true in this bank fraud conspiracy case where the nature of the prejudicial evidence—that Zilberberg would put his own interests before that of his niece—would completely overshadow any probative value that the Loan 2 evidence would have. Accordingly, evidence regarding Loan 2 should not be admitted at trial.[1]

**II.     Regulation O**

The government next moves to admit evidence that Zilberberg's conduct in this case "was in violation of Regulation O of the Board of Governors of the Federal Reserve System ('Regulation O'), which prohibits extensions of credit and transfers of extensions of credit to insiders of the Bank" unless certain conditions are met. (Gov't Motions *in Limine* at 9, 18–20.) Should the government establish the proper basis to admit this evidence at trial, counsel will request a curative instruction to the jury that violating Regulation O is itself not a crime and that Zilberberg is not charged with violating Regulation O.

---

[1] To the extent the Court admits evidence regarding Loans 3 and 4, counsel will seek a limiting instruction before the evidence is presented to the jury.

### III. Evidence of Loss to the FDIC and Bank 2

The government moves to introduce evidence that the FDIC and the victim bank's successor bank (Bank 2) suffered a loss because of the conduct in this case. (*Id.* at 20–21.) Depending on how the government admits this evidence at trial, counsel may request a curative instruction so as not to confuse the jury. Specifically, the FDIC was appointed as receiver for the victim bank after the Superintendent of Banks for New York State closed the bank on March 12, 2010, because of ineffective management and inadequate capital. (Indictment ¶ 15.) Bank 2 was then assigned as a successor bank and assumed the victim bank's obligations—including the loan that is the subject of this case. (*Id*.) The subject loan, however, did not default until October 2010, nearly seven months after the victim bank was closed. (*Id.* at ¶ 16.) Consequently, there is no basis to believe that the subject loan was the cause of the bank's closure. Should the government's evidence regarding to the FDIC's and bank 2's involvement in this case imply that the closure was related to the subject loan, counsel will request a curative instruction so as not to mislead the jury.

### IV. Statements of Co-Conspirators and Employees

The government also moves to introduce at trial statements made by Zilberberg's co-conspirators and employees. (Gov't Motions *in Limine* at 22–26.) The admissibility of these statements is dependent on the government establishing all necessary requirements under the Federal Rules of Evidence. We therefore respectfully request that this issue be resolved at trial.

### V. The Victim Bank's Negligence

The government seeks to preclude defense counsel from "introducing evidence, or otherwise arguing, that the victims of the defendant's scheme was negligent in failing to investigate and detect the defendant's fraudulent conduct." (*Id*. at 27.) Counsel does not intend to make any such argument at trial.

Counsel should not be precluded, however, from arguing or introducing evidence that Zilberberg did not commit fraud because the victim bank was aware of the true nature of the loan. Such evidence would be relevant and directly relate to the necessary element in bank fraud that the defendant either "defraud a financial institution" or "obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises." 18 U.S.C. § 1344(1)–(2).

BRAFMAN & ASSOCIATES, P.C.

### VI. Evidence Concerning the Zilberberg's Family Background, Age or Health, or Potential Punishment

The government seeks to preclude counsel from arguing or eliciting evidence about Zilberberg's family background, age or health or potential punishment if convicted. (Gov't Motions *in Limine* at 28.) Absent the government opening the door to these topics, counsel does not intend to elicit such evidence or make any such argument at trial.

### VII. Evidence or Argument Concerning Zilberberg's Good Acts or Non-Commission of Other Bad Acts

The government moves to preclude counsel from arguing or eliciting evidence regarding Zilberberg's good act or non-commission of other bad acts. (*Id*. at 29.) Absent the government opening the door to these topics, counsel does not intend to elicit such evidence or make any such argument at trial.

### CONCLUSION

For the foregoing reasons, counsel respectfully requests that this Court deny the government's Motions *in Limine* to the extent and for the reasons set forth above.

Respectfully submitted,

*/s/ Benjamin Brafman*

Benjamin Brafman, Esq.
Jacob Kaplan, Esq.
Brafman & Associates, P.C.
256 Fifth Avenue, 2nd Floor
New York, NY 10001
(212) 750-7800

cc: Government Counsel (via ECF)