

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

January 5, 2023

**BY ECF & Email**

The Honorable George B. Daniels
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

Re:    **United States v. Mendel Zilberberg,** 19 Cr. 802 (GBD)

Dear Judge Daniels:

The Government writes in reply to the defendant's letter-opposition dated December 6, 2022 ("Def. Mem.," Dkt. No. 87), to address the primary remaining point of dispute between the parties related to the motions *in limine*—namely, whether the 2008 loan to the defendant's niece ("Loan-2") should be admitted as direct evidence or, in the alternative, pursuant to Rule 404(b). For the reasons that follow, evidence of Loan-2 should be admitted at trial.

### Background

As described in the Government's motions *in limine* (Dkt. No. 84), at Zilberberg's direction, his niece ("Borrower-2") obtained a straw loan from the Bank in the summer of 2008 for Zilberberg. Zilberberg convinced Borrower-2 that if she opened an account at the Bank, he could help her gain interest earnings. Borrower-2 was a close relative of Zilberberg, and trusted Zilberberg. Therefore, at Zilberberg's direction, Borrower-2 opened an account at the Bank and deposited her life savings—approximately $100,000. On July 22, 2008, Borrower-2 signed a business loan agreement, a promissory note, and a disbursement request for Loan-2, which was a $118,000 loan from the Bank. The "primary purpose of loan" was falsely listed as "business (including real estate investment)," with the "specific purpose" of Loan-2 identified as "working capital" – just as in the fraudulent loan presentation for the Straw Borrower's loan in 2009 that is the subject of the Indictment. In reality, Borrower-2 was a schoolteacher who operated no such business. Borrower-2 did not read any of these documents before signing and does not recall knowing that she signed loan documents, but she signed them because Zilberberg asked her to and she trusted him. Borrower-2 allowed Zilberberg and his personal employees to handle all of her dealings with the Bank, much as they did for the Straw Borrower's 2009 loan.

The entire proceeds of Loan-2 were transferred to Zilberberg on the same day the Bank disbursed Loan-2. Borrower-2 never received any portion of Loan-2 or the "interest" promised by Zilberberg for opening an account at the Bank. For a period of time, Zilberberg paid nominal monthly interest payments on Loan-2. On August 4, 2009—just weeks before the Straw Borrower applied for Loan-1—Borrower-2 signed a change of terms agreement extending the maturity date of Loan-2 into 2010, as well as an assignment of deposit account with the Bank, providing the full

balance of her own savings account as collateral for Loan-2. That day, a Bank employee emailed Zilberberg copies of the two loan documents for Borrower-2. Loan-2 defaulted, and Borrower-2's personal savings were used to satisfy Loan-2.

## Discussion

The defendant does not contest the admissibility of evidence regarding a 2009 line of credit to a client of Zilberberg ("Loan-3") or a late 2009 loan to co-conspirator Aron Fried's father-in-law ("Loan-4"), subject to appropriate limiting instructions. (Def. Mem. at 2).

However, the defendant claims that evidence of Loan-2 is not admissible. Specifically, he argues that it is not admissible as direct evidence of the charged conduct because (1) it does not reflect the means and methods of the conspiracy because it was a "passbook" loan, and (2) does not share certain characteristics with Loans-1, -3, and -4. (Def. Mem. at 2).

The defendant is simply incorrect that Loan-2 does not "show the means and methods" of conspiracy because it was a "passbook" loan—a loan collateralized by money in a deposit account. (*See* Def. Mem. at 2). The defendant offers no explanation why this distinction is meaningful. The charged fraud scheme relates to (1) a loan from the Bank; (2) for which a straw borrower was used; (3) false statements were made to the Bank about, among other things, the true purpose of the loan; (4) the defendant steered the loan to the Bank; and (5) the defendant was one of the actual undisclosed beneficiaries of the loan. Loan-2 has these exact same relevant characteristics, as does Loans-3 and -4. Whether the loan was collateralized by a deposit account is of no moment.

Moreover, the rules of evidence do not require that Loan-2 share exactly the same characteristics as Loans -1, -3, and -4 to be probative direct evidence of Zilberberg's intent and knowledge, nor does the defendant provide any case law supporting his position. Here, Zilberberg's use of a straw borrower in Loan-2, just one year prior to conducting a similar scheme for Loan-1, shows that Zilberberg knew how to manipulate bank procedures in order to obtain bank funds for his own benefit, how to avoid getting caught, and that he had been successful in obtaining a straw loan. Zilberberg's participation in Loan-2 laid the groundwork for his brazen participation in securing Loan-1, an even larger fraud on the bank generating several hundreds of thousands of dollars more for Zilberberg.

Loan-2 is also clearly admissible pursuant to Rule 404(b) to show proof of Zilberberg's plan and preparation, knowledge, intent, motive, absence of mistake, and the existence of a common scheme across these frauds. *See* Fed. R. Evid. 404(b). As noted above, Loan-2 is strong evidence that the defendant made calculated decisions to exploit his position at the Bank to steer fraudulent, straw borrower loans to the Bank and then benefit from those loans—all without disclosing his interest in the loans. The fact that Zilberberg was successful in obtaining Loan-2 through a straw borrower also provides a strong motive for why he sought Loans-1, -3, and -4 through similar fraudulent means – because he thought he could get away with it.

That Loan-2 occurred approximately 13 months before Loan-1 does not render it inadmissible. (Def. Mem. at 2). *See United States v. Sanchez*, 518 F. Supp .2d 615, 616 (S.D.N.Y. 2007) (noting that gap of nine years between prior acts and charged offense "is not sufficient by itself to preclude its use at trial if other relevant criteria are satisfied"). Indeed, other acts are

frequently admitted by courts in this District that are much farther removed in time. For example, in *United States v. Jackson*—cited in the Government's motions *in limine*—the Second Circuit affirmed the admissibility of the defendant's prior bank fraud conviction under Rule 404(b), where the bank fraud conviction occurred in 2006 and the charged conduct occurred between 2010 and 2014. 792 F. App'x 849, 853 (2d Cir. 2019); *see also United States v. Jackson*, 2015 WL 4601021, at *1 (D. Conn. July 29, 2015). Importantly, Zilberg was continuing to perpetuate the Loan-2 fraud during the same time that he participated in the Loan-1 fraud, which undermines defendant's contention that the one-year gap between Loan-2 and Loan-1 reduces its probative value. As described above, just weeks before Zilberg facilitated the Loan-1 application, Zilberg participated in extending the maturity date for Loan-2, in effect, to buy time for Zilberg to keep the Loan-2 proceeds and run out the clock on repayment of the debt while he continued to siphon more money from the Bank.

Nor is evidence of Loan-2 unduly prejudicial to the defendant. (*See* Def. Mem. at 3). The defendant argues that such evidence would prejudice him because his niece (the straw borrower) "had to use her personal savings to repay the loan when Zilberg stopped making payments," and this fact "makes it seem that Zilberg is willing to have his family (not just the bank) lose money for his own economic benefit." (Def. Mem. at 3).

That the straw borrowers ultimately, and unexpectedly, ended up on the hook for the loans is relevant and admissible for a number of reasons. First, it demonstrates that the straw borrowers never anticipated that they would have to pay for the loan (*i.e.*, they were never the true borrowers—a key misrepresentation to the Bank). Second, it demonstrates that the *Bank* clearly believed that the straw borrowers were the true borrowers on the loan and is thus probative of the materiality of the misrepresentation to the Bank. Third, it tends to show that the defendant's finances were in poor condition, indicating a motive for his repeated attempts to obtain money through straw loans. That the straw borrower for Loan-2 was the defendant's niece is not unfairly prejudicial, nor is it more inflammatory than the other allegations in this case. Indeed, it is similar to Loan-4, in which the defendant's co-conspirator recruited his father-in-law to act as a straw borrower, and to Loan-1, which resulted in serious negative consequences for the Straw Borrower, including destruction of the Straw Borrower's credit rating. Given the strong probative value of the evidence, evidence of Loan-2 should be admitted.

In sum, Loan-2 fits squarely within the defendant's fraudulent course of conduct as a director of the Bank. The defendant steered fraudulent loans to the Bank, did not disclose his interest in the loan, and then personally benefited from the proceeds of the loans. He did this four times within a little over a year. Evidence of Loans -2, -3, and -4 is therefore highly probative of the defendant's knowledge and intent, which are likely to be the primary contested issues at

trial. Evidence of each of these loans is thus properly admissible both as direct evidence and alternatively under Rule 404(b).

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By: _____
Kimberly J. Ravener / Dina McLeod /
Daniel G. Nessim
Assistant United States Attorneys
(212) 637-2358 /-1040 / - 2486